593 So.2d 934 (1992)
Odile M. Chaplain BANNER, et al.
v.
GEO CONSULTANTS INTERNATIONAL, INC.
No. 91-CA-0778.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1992.
Rader Jackson, Shushan, Meyer, Jackson & McPherson, New Orleans, for plaintiffs-appellees.
P. Keith Daigle, Halpern & Daigle, Metairie, for defendant/appellant.
Before SCHOTT, C.J., and CIACCIO and PLOTKIN, JJ.
SCHOTT, Chief Judge.
This is an action by plaintiffs as owners of 1220.6 acres of land in St. Bernard Parish to cancel mineral leases they granted to defendant, GEO, for failure to develop the property within the primary term of the leases. The trial court canceled the leases except with respect to 160 acres in the center of which a producing gas well had been drilled by GEO's assignee, Devon Energy Corporation. GEO has appealed. The issue is whether the 160 acres constituted a unit so as to activate the "Pugh" clause in the leases. GEO claims the 160 *935 acre area was not a unit and production on this portion of the tract during the primary term saved the lease from cancellation as to the balance of the land.
On March 22, 1983, plaintiffs entered into mineral leases of their land with GEO. GEO assigned the leases to Devon Energy Corporation which drilled a producing gas well on the property. On March 22, 1988, the primary term of the leases expired. On March 22, 1990, Devon re-assigned the leases to GEO except for a square of 160 acres in the middle of which the gas well was located.
Louisiana Mineral Code Article 31:114 provides that operations on any portion of the leased land sufficient to maintain the lease will continue it in force as to the entirety of the leased land. However, the leases in question contain the following provision commonly known as the Pugh clause:
Anything to the contrary herein notwithstanding, it is provided that if any portion of the lands held hereunder should be unitized in any manner with other lands, then unit drilling or reworking operations on or unit production from any unit shall only maintain this lease as to the land included in such unit.
The trial court found that the 160 acre tract was a unit for purposes of the Pugh clause so that production thereon did not extend the lease beyond the primary term for the balance of the 1060.6 acres. Therefore, the court canceled the lease except for the 160 acre tract. In this court, appellant contends that this tract was not a unit and production thereon extended the lease as to the entire property covered by the lease saving the entire lease from cancellation.
Louisiana Mineral Code Article 31:213(6) defines a unit as follows:
"Unit" means an area of land, deposit or deposits of minerals, stratum or strata, or pool or pools, or a part or parts thereof, as to which parties with interests therein are bound to share minerals produced on a specific basis and as to which those having the right to conduct drilling or mining operations therein are bound to share investment and operating costs on a specified basis. A unit may be formed by convention or by order of an agency of the state or federal government empowered to do so. A unit formed by order of a governmental agency is termed a "compulsory unit".

The official comment to the article states, "This definition includes conventional units of all kinds, whether established by declaration under a pooling power, by a contract executed by all parties affected, or otherwise."
In the re-assignment of the lease by Devon to GEO the property is described as the entire tract originally leased by plaintiffs to GEO less and except the 160 acre tract in the form of a square with its center being the gas well further identified on the attached plat. The plat of the 1220 acres shows the square containing the well and designates it as "160.00 acre unit".
The reference in the comment to article 213 to "conventional units of all kinds" is sufficient to encompass the 160 acre tract in question. As between GEO and Devon, they clearly intended to create a unit around this well when they agreed that Devon would assign everything back to GEO except the 160 acre tract. They even referred to the tract as a unit.
GEO contends first that the 160 acre tract cannot qualify as unit under article 231(6) because this definition contemplates more than one party with interests in the unit whereas only one party, Devon, has an interest in this so called unit. While a literal interpretation of the article supports GEO's argument, the comment's reference to "conventional units of all kinds" does not support such a literal interpretation. Furthermore, the original leases speak of the creation of 160 acre units for gas production, as was done in this case by GEO's assignee, Devon.
Next, GEO contends that the judgment of the trial court is inconsistent with Fremaux v. Buie, 212 So.2d 148 (La.App. 3d Cir., 1968), which it claims presented the identical issue as in the present case. In this suit to cancel a lease, the issue was *936 whether a unit had been formed by the defendant as a result of an assignment and reduction of an overriding royalty interest. The court held that this instrument did not create a unit even though the area involved was referred to as a unit in the instrument; that a so called unit formed merely for intra-lessee division of mineral production does not constitute a pooling unit so as to trigger the effect of the Pugh clause. The re-assignment from Devon to GEO in the present case reserved to Devon complete control over the 160 acres including the control over and responsibility for the producing well located on the land. The nature of the present unit is not that of a unit "formed only for accounting purposes between lessees" as was the unit in the Fremaux case.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.